UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JAMES T. CZUBAK, | ) |
| | ) |
| Plaintiff, | ) |
| | )   No. 2:01-CV-622 PS |
| v. | ) |
| | ) |
| USS DIVISION OF USX, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM, OPINION AND ORDER

Plaintiff James Czubak was a given a temporary new job assignment by his employer upon returning from vacation in August, 2000. Unhappy with the new assignment, Czubak brought this lawsuit against his current employer, USS Division of USX ("U.S. Steel"), alleging that he had been discriminated against in violation of the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA"). This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. 31].

In his Response, Plaintiff Czubak concedes that there are no genuine issues of material fact with respect to his age discrimination claim. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's ADEA claim is hereby granted without further discussion. As for his ADA claim, the Defendant's Motion for Summary Judgment is granted in part and denied in part for the reasons that follow.

**BACKGROUND**

On July 2, 1969, James Czubak began working for U.S. Steel, becoming a boilermaker in 1972.  To date, Czubak is still employed by U.S. Steel at the Gary Works, in Gary, Indiana.  Since 1994, Czubak has been a boilermaker in the Fabricating D Shop ("Fab D") at the Gary Works.  A boilermaker is a fabricator of steel products used in the plant including spouts, latches, pipes, and stairs.

In 1997, Czubak blew out a disk in his back.  (Czubak Dep. at 38.)  That same year, he had back surgery, went through physical therapy, and was off work for approximately 16 weeks.  Today, Czubak can drive a car, shower, shave, cook, dress himself, swim, and has not been hospitalized since his surgery.  (Czubak Dep. at 168-69.)  However, Czubak does have a 50-pound weight restriction for lifting from his physician.  (Czubak Dep. at 70.)

In addition to his back problems, Czubak also has nerve damage in his right leg and suffers from plantar fasciitis (the most common cause of heel pain).  Because of his plantar fasciitis, since 1995 Czubak has had a "drive-in pass" that allows him to drive onto the plant site and park, to lessen the distance he has to walk to get to work.  Other plant employees must park in a lot approximately three-quarters of a mile from the plant and take a bus or walk to the plant.  Wayne Nordengreen, a former U.S. Steel employee, who was Czubak's immediate supervisor during the time in question, admitted that U.S. Steel will issue "drive-in passes" to employees that have a "disability and can't walk long distances."  (Nordengreen Dep. at 28.)  He also testified that 90% of employees have to park in the lot that is three-quarters of a mile away.  (*Id.*)

For a period of six and a half years, Czubak worked as a boilermaker performing the duties of a fitter on a fitting table. (Czubak Dep. at 65). Cranes were available to assist the boilermaker with lifting a piece of equipment or whatever was being fabricated. (Czubak Dep. at 47.) A JIB crane with lifting ability up to two tons is also available for use in the fabrication shop. (*Id.* at 48.) The fitting table also has a one-inch band of rubber around it that Czubak could stand on, so that he did not have to stand directly on the concrete floor.

On August 14, 2000, Czubak was assigned to work on the drill press by shift manager Nordengreen. Czubak was not given a JIB crane to use, and because this work required the lifting of heavy objects he was forced to ask other employees for assistance. (Czubak Dep. at 60.) In addition, unlike his earlier station, the drill press had no rubber around it, so Czubak had to stand directly on the concrete floor. As a part of this new assignment, Czubak, on at least one occasion, operated all the "sheet metal rolls" in one day. (*Id.* at 157.) The operation of this machinery caused him to walk a distance roughly of 120 feet, back and forth across the fabrication shop. (*Id.* at 183.)

On another occasion, Czubak was assigned to fabricate half of a project and another worker, Bob Denney, was to complete the other half. However, there was only one drawing for the job. (*Id.* at 126.) Because Czubak no longer worked at the fitting table next to Denney, he was required to get parts every day and walk down to Denney's table to view the drawing, and then walk back to his own table to fabricate on the opposite end of Fab D. (*Id.* at 131.) Even though a table was available next to Denney's, Nordengreen would not allow Czubak to work there. (*Id.* at 127.)

3

Decisions regarding assignments are supposed to be based on the quantity of work, the deadlines for those work orders, the availability of the employees, the skills of those employees, and the availability of the equipment. (Holland Aff. ¶ 6.) A new employee, Tom Perfetti (who knew Nordengreen from a previous job), was assigned Czubak's previous assignment on the fitting table. Perfetti was allegedly not disabled.

Czubak tried to talk with Nordengreen about the new assignment, but he allegedly threw him out of his office. (Czubak Dep. at. 67.) On September 14, 2000, Czubak spoke with Liz Modesto, a union representative regarding the assignment change. The details of their conversation are unclear from the record. Modesto then spoke directly to Nordengreen. Modesto informed Czubak that Nordengreen claimed to have documentation that Czubak was too "slow." (*Id.* at 68.)

In February 2001, Nordengreen assigned Czubak the job of painting a yellow safety line on the floor. Nordengreen testified that he asked Czubak to paint the safety lines because they were starting to fade and he had already asked for a painter to come and do the job, but was told that a painter would not be available for four months. (Nordengreen Dep. at 25.) This job required Czubak to bend, causing strain on his knees and legs. Czubak was frustrated with his job assignments and believed new (non-disabled) hires were getting preferential treatment. Czubak testified as follows, "And here is a guy, two weeks, he just got hired. He got a JIB crane, he got a helper, and he is working over there, and I am painting on my hands and knees with 34 years of service." (Czubak Dep. at 61.)

In March 2001, Czubak was reassigned to his old job at the fitting table. It is unclear from the record whether he remains in that same position today. During the eight month time

4

frame when Czubak was at the drill press performing so-called "processing" assignments, Czubak continued to be paid at the boilermaker rate.[1] (Czubak Dep. at 139.) Czubak testified that he thought that management had the right to reassign employees to different machines or jobs, but not for an eight month period. (*Id.* at 177-78.)

On November 13, 2000, Czubak filed a charge of discrimination with the EEOC (Charge Number 24EA10045). The EEOC Charge states the following:

> I. I am a person with a disability, hired by the respondent on July 2, 1969. My position is Boilermaker. I feel that because of my disability, on August 14, 2000 I was taken off of my job, and the position was given to a non-disabled person, and given a position that a person with a restriction should have.
>
> II. The reason given to me for said action by Wayne Nordengreen, Turn Foreman was, "you are slow."
>
> III. I believe the adverse action taken against me to be discriminatory and in violation of my rights based on my disability.

(*See* Am. Compl., Ex. A.) The EEOC issued a Right to Sue letter on March 15, 2001.

## DISCUSSION

**<u>Summary Judgment Standard</u>**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Howard v. Lear Corp. EEDS & Interiors*, 234 F.3d 1002, 1004 (7th Cir. 2000); *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 458 (7th Cir. 1999). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of*

---

[1] In his deposition, Czubak alleged that he may have missed overtime between February 2001 and March 2001, but later admitted that his overtime was equalized by April 1, 2001 with his co-workers. (Czubak Dep. 92-93.)

*Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  When examining the evidence, the court should resolve all ambiguities and draw all inferences in favor of the non-moving party.  *Haefling v. United Parcel Serv., Inc.,* 169 F.3d 494, 497 (7th Cir. 1999); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1453 (7th Cir. 1994).

### Application to Issues

The ADA prohibits employers from discriminating against an employee on the basis of a qualified disability.  42 U.S.C. § 12112(a).  As a threshold matter, the employee must first show that he has a disability within the meaning of the ADA.  *Sinkler v. Midwest Prop. Mgmt. Ltd.*, 209 F.3d 678, 683 (7th Cir. 2000).

Once a plaintiff has established that he is a qualified individual with a disability, he may show discrimination in either of two ways: by presenting evidence of (1) disparate treatment – a claim that an individual with a disability was, due to that disability, treated differently than a non-disabled co-worker; or (2) failure to accommodate – a claim that the employer did not make reasonable accommodations for an individual who is disabled but otherwise qualified.  *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001).

In this case, Plaintiff has asserted both a disparate treatment claim and a failure to accommodate claim.  Each claim is addressed separately below.

### I. Disparate Treatment Claim

As with other federal anti-discrimination statutes, an ADA plaintiff may prove disparate treatment either by presenting direct evidence of discrimination, or he may prove it indirectly using the *McDonnell Douglas* burden-shifting method.  *See e.g., Dyke v. O'Neal Steel, Inc.,* 327

6

F.3d 628, 631 (7th Cir. 2003).  Czubak lacks direct evidence and must proceed under the indirect method of proof.

To establish a *prima facie* case of disability discrimination, Czubak must show that (1) he is disabled or regarded as disabled within the meaning of the ADA, (2) he is qualified to perform the essential functions of his job either with or without reasonable accommodation, and (3) he has suffered from an adverse employment decision because of his disability.  *Dyke*, 327 F.3d at 631; *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002); *Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 669-70 (7th Cir. 2000).  Czubak cannot establish a *prima facie* case of disparate treatment because there is no evidence that he suffered an adverse employment action because of his disability.

For an employment action to be adverse,  the action must cause an adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or alteration of job responsibilities.  *Tyler v. Ispat Inland Inc.*, 245 F.3d 969, 927 (7th Cir. 2001) (citing *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)).  Thus, "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action."  *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).  "[A] materially adverse change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities[.]"  *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 932 (7th Cir. 1996).

For example, in *Conley v. Village of Bedford Park*, 215 F.3d 703 (7th Cir. 2000), an ADA case, an employee was assigned the task of painting – a task that he viewed as considerably undesirable.  The Seventh Circuit held that this type of assignment was not an

adverse employment action because it was merely an "alteration of job responsibilities." *Id*. at 712. Likewise, in *Spring v. Sheboygan Area School District*, 865 F.2d 883 (7th Cir. 1989), an age discrimination case, the Seventh Circuit found that a principal's reassignment to a dual principalship within the school district was not an adverse employment action. The Court held that "the [ADEA] is not intended to prevent employers from changing the job responsibilities of their 40 to [70] year old employees. Neither is the Act intended to give 40 to [70] year old employees the right to walk out and sue their employer because they dislike their changed job responsibilities." *Id.* at 885 (quotations omitted).

The ADA is not intended to give employees with a disability the right to sue their employer because they are unhappy or dislike their changed job responsibilities. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 115 (7th Cir. 2001). Czubak's job assignment changed from fitter to working the drill press for a period of approximately eight months. But Czubak continued to do boilermaker work. Even the painting of the yellow safety line was work that U.S. Steel had a right to demand be done by a boilermaker. Czubak's complaint is that he was the one chosen to complete the task instead of a newer, less experienced boilermaker. But this is really a complaint about U.S. Steel's failure to accommodate him. In other words, during this time frame Czubak never changed departments, remained a boilermaker, continued to receive the same regular pay, incentive pay and overtime.[2] There is simply no evidence that Czubak had any wage loss or loss of any monetary or material benefit. Czubak's personal dissatisfaction with a particular assignment does not equate to an adverse employment action. Therefore, while

---

[2] In his deposition, Czubak alleged he may have missed overtime between February 2001 and March 2001. (Czubak Dep. at. 93.) However, he admitted that his overtime was equalized by April 1, 2001 with his co-employees. (*Id.* at 92; Holland Aff. ¶¶ 15-21.)

8

Czubak may not have liked working on the drill press or painting the safety line, these types of routine assignment changes are not adverse employment actions recognized under the ADA. Accordingly, U.S. Steel is entitled to summary judgment on Czubak's disparate treatment claim.

### II. "Failure to Reasonably Accommodate" Claim

U.S. Steel does not address the substantive merits of Czubak's failure to accommodate claim because it contends that Czubak failed to file any charge with the EEOC that encompasses such a claim. U.S. Steel is incorrect.

It is well established that a plaintiff is barred from raising an ADA claim in the district court that is absent from his EEOC charge "unless the claim is reasonably related to one of the EEOC charges." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) (citing *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996)). Here, Czubak checked the "Disability" box on his EEOC charge and made clear in the text of his claim that he was making a failure to accommodate claim. Specifically, Czubak stated:

> I am a person with a disability, hired by the respondent on July 2, 1969. My position is Boilermaker. I feel that because of my disability, on August 14, 2000 I was taken off of my job, and the position was given to a non-disabled person, and given a position that a person with a *restriction* should have.

(emphasis supplied.) Absent using the magic words, "failure to reasonably accommodate," Czubak did as much as any lay person should be required to do to preserve a failure to accommodate claim. Czubak described how he was in a position with an accommodation and how he was taken off that position and replaced by a non-disabled person who did not require an accommodation. Regardless, a failure to accommodate claim is reasonably related to Czubak's

9

discrimination claim contained in his EEOC charge, and therefore it was not waived.  Next, we turn to the merits of Czubak's failure to accommodate claim.

The ADA requires covered entities, including private employers, to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship."  *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193 (2002) (citing 42 U.S.C. § 12112(b)(5)(A)).  U.S. Steel is an "employer" within the meaning of the ADA.  Therefore, to recover for failure to reasonably accommodate, Czubak must show: (i) that he was or is disabled as defined by the ADA; (ii) that his employer was aware of his disability; and (iii) that he was qualified for the position in question. *Conteras v. Suncast Corp.*, 237 F.3d 756, 762 (7th Cir. 2001) (citations omitted).  U.S. Steel cannot contest that Czubak was unqualified for the position in question because he was, and continues to be, employed as a boilermaker at U.S. Steel to this date.  Therefore, it is only necessary to address the first two requirements.

Under the ADA, a disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).  There are genuine issues of material fact concerning whether or not Czubak is disabled under both subsections (A) and (C).

EEOC regulations define major life activities including such functions as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).   In determining whether an individual is substantially limited

in a major life activity, we are to examine whether that individual, when compared to the general population, is unable to perform or is significantly restricted as to the condition, manner, or duration under which he can perform that major life activity. *See Duda v. Board of Educ. of Franklin Park Pub. Sch. Dis. No. 84*, 133 F.3d 1054, 1058 n.5 (7th Cir. 1998); 29 C.F.R. § 16302(j)(1). Courts should also consider the nature and severity of the impairment, its duration or expected duration, and its permanence or long term impact. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 438 (7th Cir. 2000) (citations omitted).

      Czubak's alleged "disability" is in reality a number of physical impairments, that include his back problems, plantar fasciitis, and nerve damage to his right leg. Czubak argues that these problems taken together substantially limit his ability to engage in the major life activity of walking. (Plaintiff's Mem. at 14.) There is evidence in the record that Plaintiff has difficulties walking long distances and that he walks with a limp. In addition there is evidence that Czubak required and obtained a "drive-in pass" to park on the plant site because he could not walk the three-quarter mile distance from the employee parking lot. Furthermore, Nordengreen, Czubak's former supervisor, testified that the "drive-in passes" were for employees that have a disability and can't walk long distances. (Nordengreen Dep. at 28.)

      Viewing the evidence in the light most favorable to Czubak, as we must, we find that there exist disputed issues of material fact regarding whether Czubak is disabled under the ADA. Specifically, there is evidence that Czubak's physical impairments limit his ability to walk and may substantially limit his ability to walk. *Cf. Sears, Roebuck & Co.*, 233 F.3d at 438 (finding a plaintiff's inability to walk more than one city block supporting her claim that she may have been substantially limited at the time at issue); *but see Moore v. J.B. Hunt Transport, Inc.*, 221

11

F.3d 944, 951 (7th Cir. 2000) (plaintiff's ability to consistently walk distances up to a mile did not constitute significant restrictions on his ability to walk when compared with the ability of the average person).

However, it is impossible to determine the severity of Czubak's impairment on the record before the Court. First, the record is incomplete regarding the actual distances that Czubak was able to walk. Second, there is no evidence of how Czubak's impairment limited his ability to walk in comparison to the average member of the population. In the absence of such evidence, summary judgment is problematic. *See Sears, Roebuck & Co.*, 233 F.3d at 439.

Similarly, there is also disputed issues of material fact concerning whether U.S. Steel regarded Czubak as having a disability. There is evidence that Czubak applied for and received from U.S. Steel the "drive-in" parking pass because of his inability to walk long distances. Even though Czubak obtained this pass in 1995, he was still using it during the eight month time frame at issue. Furthermore, Czubak contends that the one-inch rubber cushion surrounding the fitting table in the fabrication shop was an accommodation from U.S. Steel for his plantar fasciitis. This fact was never refuted or even addressed by U.S. Steel in its Reply. As a result, we can not find as a matter of law that U.S. Steel did not regard Czubak as being disabled.

For these same reasons, we also cannot find as a matter of law that U.S. Steel was not aware of Czubak's disability. If U.S. Steel had been accommodating Czubak and then stopped accommodating him, it may be inferred that it was aware of his disability.

Accordingly, Defendant U.S. Steel's motion for summary judgment as to Czubak's failure to reasonably accommodate claim is denied because there are genuine issues of material fact remaining in this matter including: 1) Was Czubak disabled within the meaning of the

ADA? 2) Did U.S. Steel regard Czubak as disabled?  3) Did Czubak's disability substantially limit him in a major life activity? 4) Was U.S. Steel aware of Czubak's disability? 5) Did U.S. Steel fail to reasonably accommodate Czubak?

## CONCLUSION

For the foregoing reasons, Defendant U.S. Steel's Motion for Summary Judgment [Doc. 31] is hereby **DENIED** as to Plaintiff Czubak's failure to reasonably accommodate claim, and **GRANTED** as to Czubak's disparate treatment claim and his age discrimination claim.  The Final Pretrial/Settlement Conference in this matter is now set for December 15, 2004, at 9:00 a.m.; the Trial Management Conference in this matter is now set for January 13, 2005, at 10:00 a.m.; and the Jury Trial in this matter is now set for January 18, 2005, at 8:30 a.m.

**SO ORDERED**.

ENTERED: September 27, 2004

s/ Philip P. Simon<br>
PHILIP P. SIMON, JUDGE<br>
UNITED STATES DISTRICT COURT